UNITED STATES of America, Plaintiff,

v.

Richard Clark GARDNER, Defendant.

No. 97–CR–34–H.

United States District Court,
N.D. Oklahoma.

July 7, 1998.

Charles Robert Burton, IV, Richard Thomas Seymour, Fred Randolph Lynn, Ernest A. Bedford, Richard Clark Gardner, Tulsa, OK, for defendant.

John David Russell, United States Attorney, Tulsa, OK, for U.S.

*ORDER*

HOLMES, District Judge.

This matter comes before the Court on a motion for attorneys' fees (Docket # 73) by Defendant Richard Clark Gardner. In this case of first impression, Mr. Gardner requests that the Court assess attorneys' fees and expenses incurred in his defense pursuant to Public Law No. 105–119, § 617, 111 Stat. 2440, 2519 (1997) (the "Hyde Amendment") (enacted Nov. 26, 1997). Mr. Gardner seeks $108,332.91 in fees and expenses. A hearing was held in this matter on June 11, 1998.

I

Agents of the Internal Revenue Service ("IRS") began investigating Mr. Gardner in 1991 in connection with his activities as a tax preparer.[1] In March 1995, IRS agents obtained a search warrant and searched his tax preparation business, Gardner's Tax Service. On March 11, 1997, a grand jury returned an indictment charging Mr. Gardner with eighteen counts of assisting in the preparation of

---

1. Mr. Gardner maintains that the 1991 investigation does not pertain to the instant case, which he contends began only after he filed bankruptcy in 1995. For purposes of this motion, the Court accepts the 1995 start date.

false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2); three counts of fraudulently concealing an asset during a bankruptcy proceeding in violation of 18 U.S.C. § 152; and two counts of bankruptcy fraud in violation of 18 U.S.C. § 157. On May 8, 1997, a grand jury returned a superseding indictment that realleged the eighteen tax fraud counts for violations of 26 U.S.C. § 7206(2). The superseding indictment also alleged three violations of 18 U.S.C. § 152, one of which duplicated count 21 of the original indictment. Counts 1–3 of the superseding indictment alleged Mr. Gardner prepared false tax returns for undercover IRS agents.

On November 6, 1997, the Court granted Defendant's motion to sever the bankruptcy counts from the tax fraud counts. However, the Court also scheduled the two trials to occur back-to-back and allowed the Government to choose the order in which the two trials would proceed. Pursuant to the Government's request, in orders dated November 26, 1997, and December 1, 1997, the Court scheduled the trial of the bankruptcy fraud counts to commence first, to be immediately followed by the trial of the tax fraud counts.

On October 10, 1997, the Court, based upon the Government's motion, dismissed without prejudice counts 6 and 10 of the superseding indictment, both of which alleged § 7206(2) tax fraud violations. Mr. Gardner did not contest this motion. On December 19, 1997, the Court granted the Government's motion to dismiss without prejudice counts 4, 7, 9, 11, 16, and 18, alleging § 7206(2) violations, and counts 19, 20, and 21, the three bankruptcy fraud counts. Mr. Gardner argued that these counts should have been dismissed with prejudice.

At the pretrial hearing on December 19, 1997, the Court addressed the Government's proposal regarding its expert witness. The Government requested that its expert, Mitch Ross, testify at the conclusion of testimony and summarize the evidence that had been presented. The Government further requested that under this format Mr. Ross be relieved of his obligation to provide an expert witness report under Fed.R.Crim.P. 16(a)(1)(E).

Because this proposed format was contrary to Fed.R.Crim.P. 16(a)(1)(E) and otherwise unsupported by legal authority, the Court denied the Government's request. The Court ordered the Government to produce an expert report by December 30, 1997.[2] The Government, however, did not produce any such report, having decided instead to dismiss the charges against Mr. Gardner. It is noteworthy that also discussed at this pretrial hearing was the Government's intention not to call the IRS agent who had investigated this case, Agent Robert Walter, as a witness in this case.

On January 5, 1998, the date scheduled for a hearing on Defendant's motion to dismiss for prosecutorial vindictiveness,[3] the Government moved to dismiss without prejudice the remaining counts of the superseding indictment. At a hearing on this matter, Mr. Gardner argued that this dismissal should be granted with prejudice. The Court dismissed the remaining counts of the superseding indictment without prejudice, with the exception of counts 1–3, the counts involving the undercover IRS agents. The Court dismissed these counts with prejudice, finding that "in order for there to be a violation of 26 U.S.C. Section 7206(2) in circumstances involving a tax adviser where a 'return' is prepared by that tax adviser, there must exist actual tax matters in respect of an individual who is subject to the requirements of the Internal Revenue Code to present a tax return under the Internal Revenue Code, and the consultation with the tax adviser must be regarding the contents of the return so required." Order of Jan. 12, 1998, at 2.

## II

The Hyde Amendment, the statute under which Mr. Gardner seeks attorneys' fees and expenses, was enacted as part of a 1997 appropriations bill and is found as a statutory

---

**2.** At the time of this hearing, the record reflected that the Government's expert had not reviewed any documentary evidence whatsoever in this case.

**3.** Mr. Gardner filed his motion to dismiss for prosecutorial vindictiveness on December 18, 1997.

note to 18 U.S.C. § 3006A. The Hyde Amendment provides in its entirety as follows:

§ 617. During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) pending on or after the date of the enactment of this Act, may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code. To determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

Pub.L. No. 105–119, § 617, 111 Stat. 2440, 2519 (1997). By its terms, the Hyde Amendment incorporates the "procedures and limitations" contained in 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA"). Mr. Gardner argues that he has satisfied all requirements of the Hyde Amendment and thus is entitled to his requested attorneys' fees and expenses. In the alternative, Mr. Gardner argues that he is entitled to discovery to develop a case in support of his request for relief under the Hyde Amendment.

There is sparse legislative history with respect to the Hyde Amendment and as yet no court has rendered an opinion construing its provisions. A version of the law was first introduced on September 24, 1997 during the floor debate on the fiscal year 1997 appropriations bill for the Departments of Commerce, Justice, and State, when Representative Henry Hyde offered the following proposed amendment:

SEC. 616. ATTORNEYS FEES AND OTHER COSTS IN CERTAIN CRIMINAL CASES.

During fiscal year 1997 and in any fiscal year thereafter, the court, in any criminal case pending on or after the date of the enactment of this Act, shall award, and the United States shall pay, to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation costs, unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust. Such awards shall be granted pursuant to the procedures and limitations provided for an award under section 2421[sic] of title 28, United States Code. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

143 Cong. Rec. H7786–04, H7791 (statement of Rep. Hyde). Prior to the proposed addition of this language, section 616 of the appropriations bill dealt only with the reimbursement of legal expenses to Members of Congress and their staffs when a Justice Department prosecution failed to convict them. *Id.* at H7792 (statement of Rep. Rivers).

Offered on the floor, there had been no hearings on Representative Hyde's proposed amendment to section 616 and there had been no opportunity for the Department of Justice or the criminal defense bar to comment on its provisions. *Id.* at H7791 (statement of Rep. Skaggs). Further, criticism of the proposed amendment noted the lack of any requirement that the Government's conduct be "malicious" and "abusive" *Id.* at H7792.

The final version of the Hyde Amendment passed the House of Representatives by a vote of 340–84 on September 25, 1997. 143

Cong. Rec. H7849–01, H7849. There is little history to explain the transformation of Representative Hyde's original proposed amendment into its present form.[4] The Conference Report on the Commerce, Justice, State appropriations bill on this issue states in its entirety as follows:

> On the Hyde provision, we have language that we believe is acceptable to all parties, that allows the recovery of attorneys' fees in criminal cases where the defendant is acquitted where the court finds that the prosecutor acted vexatiously, frivolously or in bad faith.

143 Cong. Rec. H10918–07, H10919 (Nov. 13, 1997).

■ To construe the Hyde Amendment and apply its terms to the instant case, the Court must determine legislative intent in accordance with the standard rules of statutory construction. In determining the intent of a statute, a court must first examine the language of the statute itself. *Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *United States v. Gottlieb*, 140 F.3d 865, 868–69 (10th Cir. 1998). Here, the words of Justice Holmes are instructive: "there is no canon against using common sense in construing laws as saying what they obviously mean." *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1929). In addition to the words of a statute, a court should also examine its legislative history. *Train v. Colorado Pub. Interest Research Group, Inc.*, 426 U.S. 1, 9–10, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976); *Owen v. Magaw*, 122 F.3d 1350, 1354 n. 1 (10th Cir.1997).

Although there were no hearings or committee reports to help guide this determination, the statements by Representative Hyde in introducing the Amendment inform the proper construction of its terms. Representative Hyde stated:

> We have a law called the Equal Access to Justice Act, which provides in a civil case if the Government sues you, and you prevail, if the Government cannot prove substantial justification in bringing the suit, you are entitled to have attorney's fees and costs reimbursed. That is justice. I do not say the Government, when they bring a civil suit against anybody or everybody, has to always win to be justified in bringing the suit, but if the suit was not substantially justified, in other words, if it was an abuse of process, if it was frivolous, if it was malicious, then the victim, the defendant who has prevailed, is entitled to attorney's fees, very modest, $125 an hour. But that is the law, and it has been the law for 17 years. There are cases interpreting it, interpreting what substantial justification for the Government to bring the litigation is, and we have had 17 years of successful interpretation and reinforcement of that law.
>
> *Now, it occurred to me, if that is good for a civil suit, why not for a criminal suit?* . . . .

143 Cong. Rec. H7786–04, H7791 (statement of Rep. Hyde) (emphasis added).

Representative Hyde further stated as follows:

> The Constitution protects you, but it will not pay your bills. That Constitution you carry in your pocket, the landlord will not take that and your lawyer will not take that. They want to get paid with cash. When the Government sues you and, by the way, you seem to have sympathy for everybody in this picture but the victim, who has been sued and the Government cannot substantially justify the lawsuit. I really wish you had some imagination and could imagine yourself getting arrested, getting indicted, what happens to your name, to your family, and the Government has a case it cannot substantially justify. They do not need to defend against malice or hardness of heart or anything like that, just substantial justification. They do not have to win.
>
> *The fact that I picked this time and we have not had hearings, that is just a dodge. This is about as simple a concept as there is. We have had it and we have been satisfied with it in civil litigation. I am simply applying the same situation to criminal litigation* . . . .

---

4. The Court notes that the original amendment proposed by Representative Hyde was much broader than the version eventually enacted and would have allowed a prevailing criminal defen- dant to recover reasonable attorneys' fees when the action lacked "substantial justification." Leslie J. Hagin, *105th Congress Winds Down First Session*, 21 *Champion* 53 (Dec.1997).

*Id.* at H7793 (statement of Rep. Hyde) (emphasis added).

Based on these statements, and without any evidence of legislative intent to the contrary, the Court believes that Representative Hyde's intent in introducing this measure was to import the Equal Access to Justice Act to the fullest extent possible to the criminal context. This view will guide the Court's consideration of each of the contested provisions of the Amendment under the standard rules of statutory construction.

█ The first contested provision is the meaning of the term "procedures and limitations" of the EAJA that the Hyde Amendment incorporates. The phrase "procedures and limitations" in the final version of the statute was also present in Representative Hyde's original proposal. The Court concludes that in using the phrase "procedures and limitations" in the Hyde Amendment, Congress intended to import the civil EAJA provisions to the criminal context to the fullest extent possible and that this should include the incorporation of the EAJA "definitions" into the Hyde Amendment to the extent applicable.

Several reasons compel this conclusion. First, nothing in the language of the statute or the legislative history suggests that there is any independent jurisprudence associated with the phrase "procedures and limitations" or that the phrase has a meaning separate from the meaning of a definition. Second, nothing in the statute or legislative history indicates the manner in which a court is to distinguish between a non-incorporated "definition" and an incorporated "procedure and limitation." For this Court to fashion arbitrary distinctions of this kind would constitute unwarranted judicial legislation.[5]

Third, all terms of the EAJA, including definitions, should be incorporated into the Hyde Amendment to the extent applicable because all definitions generally operate as limitations. For instance, as noted at the hearing on this matter, the first definition to appear in the Internal Revenue Code is that

of a "surviving spouse." Section 2(a) defines a surviving spouse for purposes of taxation as the spouse of a taxpayer who "died during either of his two taxable years immediately preceding the taxable year ...." I.R.C. § 2(a). Thus, it is evident that this definition operates to limit the scope of a surviving spouse to a two-year period. Similarly, the "definitions" in the EAJA also operate as "limitations" as that word is used in the Hyde Amendment.

Finally, the Court notes that Congress has specifically excluded the burden of proof of the EAJA from the Hyde Amendment. Since Congress knew how to exclude EAJA provisions from the Hyde Amendment, but chose not to do so in other contexts, the legislative intent is clear not to broadly exclude other EAJA provisions. *Gottlieb,* 140 F.3d at 869–70 (stating the principle of statutory construction that had Congress intended to include conduct within the scope of a statute, it can do so expressly, as it has done in other contexts). In summary, consistent with the guiding principle set forth above, the Court will apply the EAJA to the extent possible in analyzing both Mr. Gardner's and the Government's arguments concerning the statute.

### III

█ To recover attorneys' fees under the Hyde Amendment, a criminal defendant first must be a "prevailing party." The Hyde Amendment does not define the term "prevailing party." In other contexts, however, the Tenth Circuit has defined a prevailing party as one who "win[s] the relief it seeks." *Dahlem v. Board of Educ. of Denver Pub. Sch.,* 901 F.2d 1508, 1512 (10th Cir.1990) (construing term under § 1988).

Mr. Gardner contends that he is the prevailing party since the Government eventually dismissed all of the counts in his case, although all but three of the dismissals were without prejudice. He claims that he "could not have achieved, as the result of any subsequent judicial proceedings, any more relief than he got." Def.'s Br. at 3.

---

**5.** For example, although the Government argues that the net worth requirement in § 2412(d)(2)(B) is a "limitation" incorporated in the Hyde Amendment, it also argues, without a principled basis for distinction, that the EAJA terms "final judgment" and "position of the United States" are merely "definitions" and therefore are not incorporated into the Hyde Amendment.

Mr. Gardner also asserts that the Government's January 5, 1998 dismissal was a settlement with him and that a voluntary dismissal, by itself, makes him the prevailing party. Specifically, Mr. Gardner maintains that in other fee statutes, when a party dismisses its case, with or without prejudice, the opposition is the prevailing party. *See Cantrell v. International Bhd. of Elec. Workers Local 2021,* 69 F.3d 456, 458 (10th Cir.1995) (holding that "when a party dismisses an action with or without prejudice, the district court has discretion to award costs to the prevailing party under Rule 54(d)").

Mr. Gardner further contends that when a defendant makes no concession to induce a plaintiff to dismiss, then the defendant is the prevailing party, *St. Paul Fire & Marine Ins. Co. v. United States,* 4 Cl.Ct. 762, 767 (1984), and that a party's "constant prodding" can "motivate" the opposition to go farther than it would have, thereby making the party a prevailing party. *See Chicano Police Officer's Ass'n v. Stover,* 624 F.2d 127, 131 (10th Cir.1980) (noting that a plaintiff can prevail when the relief in the case could not have been achieved without the "continued impact" of plaintiff's action).

Finally, Mr. Gardner contends that he has prevailed because he has directly benefited from the dismissal of the indictment. *See Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (stating that under § 1988, a plaintiff is a prevailing party "by modifying the defendant's behavior in a way that directly benefits the plaintiff").

In contrast, the Government argues that "a defendant does not prevail in a criminal case unless he is acquitted on all or substantially all counts or he affirmatively succeeds in bringing the entire prosecution to an end in his favor." Govt.'s Br. at 7.[6] The United States also offers four reasons why a dismissal without prejudice should not make a de-

fendant a "prevailing party" under the Hyde Amendment: (1) the defendant has not prevailed on these counts because the Government can reindict on the same offenses; (2) a dismissal without prejudice may rest on a number of factors, many irrelevant to the Government's alleged improper behavior; (3) the determination that a defendant is a prevailing party based upon a voluntary dismissal may be an incentive for prosecutors not to dismiss cases; and (4) the Court would have to conduct a "minitrial" for each dismissal without prejudice to consider the prosecutor's motives, wasting judicial resources, intruding on the Government's deliberative process, and infringing on separation of powers. Moreover, the Government argues that even if Mr. Gardner is considered to have prevailed on the three counts dismissed with prejudice, considering the overall result of the case and the fact that 18 of the 21 counts were dismissed "on the Government's terms," Mr. Gardner still cannot be considered a "prevailing party" because the dismissal of the three counts is only a minor victory.[7]

Mr. Gardner suggests that in defining a "prevailing party," the Court should consider all federal jurisprudence relating to the term and, in particular, case law in the civil rights area. As with other Hyde Amendment terms, however, the Court first looks to the definition of "prevailing party" in cases arising under the EAJA, based on the above-announced principle that the intent of the Hyde Amendment was to incorporate the EAJA into the criminal context to the extent applicable. After having compared the concept of "prevailing party" under the EAJA with other federal statutes, the Court concludes that there is no substantial difference in the manner that courts have treated and determined a party's status as a "prevailing party" under the different statutes.[8]

 Thus, relying on the cases interpreting the term, the Court finds that in the

---

6. The Court notes that the dismissals with prejudice of counts 1–3 meet this definition.

7. The Court finds the suggestion that the dismissal of all counts in a criminal case constitutes a settlement "on the Government's terms" to be remarkable. If this were true, all criminal defendants would be satisfied to settle their respective cases "on the Government's terms."

8. *See Lundin v. Mecham,* 980 F.2d 1450, 1457 n. 10 (D.C.Cir.1992)(stating that the "standards for fee recovery under § 1988 are applicable to all statutes that authorize fee awards to prevailing parties"); *Commissioner, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 161–62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (comparing definitions of prevailing party under various fee-shifting statutes).

instant case Mr. Gardner is a "prevailing party" for purposes of the Hyde Amendment. The Court first rejects both the Government's call for a bright-line rule that a dismissal without prejudice can never render a defendant a prevailing party under the statute and the parade of horribles that the Government suggests would result.[9] There is no support for such a bright-line rule in the language of the Hyde Amendment or in the legislative history and to judicially create such a rule would contravene the Amendment's purpose.[10]

Having rejected the Government's proposed bright-line rule, the Court must now consider the facts of Mr. Gardner's case in light of the authorities interpreting "prevailing party."[11] A reading of the filed record and docket sheet does not inspire confidence in this case. In short, there were charges not pursued, changes in charges, and dismissals both with and without prejudice piece by piece. After being ordered to provide a report for its expert witness, and on the day scheduled for an evidentiary hearing on Defendant's motion to dismiss for prosecutorial vindictiveness, the Government moved to dismiss all remaining counts. In the instant case, based on the totality of the circumstances, including the litigation chronology and the fact that Mr. Gardner won the relief that he sought, *see Dahlem,* 901 F.2d at 1512; *Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566, the Court finds that Mr. Gardner is a "prevailing party."[12]

9. In reaching this conclusion, the Court specifically rejects the Government's four arguments as to why a dismissal without prejudice cannot render a claimant a "prevailing party." As to the Government's first argument that Mr. Gardner is not a prevailing party since the Government can reindict him on the same offenses, the Court notes the express representation that he will not be prosecuted again and the well-settled view that this representation holds in criminal law. *See infra* notes 14–18 and accompanying text.

The Court also rejects the Government's second argument that a dismissal without prejudice cannot render a defendant a prevailing party since the dismissal may have rested on a number of factors other than the alleged improper behavior. The Court does not contest this proposition by the Government and emphasizes that when determining prevailing party status, a court must examine the totality of the circumstances and the facts of each case to determine whether a defendant can be said to have prevailed as a result of the dismissal.

The Court also rejects the Government's third argument that prosecutors will now have an incentive not to dismiss cases. The Court understands the Government's fear that dismissals without prejudice may result in Hyde Amendment claims. The Court also recognizes, however, that the award of *any relief* under the Hyde Amendment is likely to encourage more Hyde Amendment claims in the future. The fact that this Court has determined that the Government's dismissal without prejudice has made Mr. Gardner a "prevailing party" should not deter other courts with less compelling facts from reaching the opposite conclusion. As to this third argument, the Court is also confident that prosecutors will continue to consider each case on its own merits and dismiss any case should the facts so warrant.

The Government's final argument is that the Court would have to conduct a separate hearing for each dismissal without prejudice and also conduct an inquiry into the prosecutor's motives and reasons for dismissal. The Court points out, however, that every dismissal without prejudice will not follow the same path as Mr. Gardner's case. In the instant case, the Court has established a high threshold to obtain discovery under the Hyde Amendment and does not believe that every case will be able to meet this threshold. Moreover, the Court recognizes that with the creation of a new federal right, there will be individuals who seek to avail themselves of that right, which necessarily involves accompanying hearings and other court proceedings.

10. The Court observes that the comments by Representative Hyde suggest no requirement that the object of wrongful conduct by the United States must win acquittal or a dismissal with prejudice. As noted above, he stated "I really wish you had some imagination and could imagine yourself getting arrested, getting indicted, what happens to your name, to your family, and the Government has a case it cannot substantially justify. They do not need to defend against malice or hardness of heart or anything like that, just substantial justification. They do not have to win." 143 Cong. Rec. H7786–04, H7793 (statement of Rep. Hyde). Clearly, the focus is on the lack of substance of the prosecution, not on the precise form in which the citizen prevails over such a prosecution.

11. It should be emphasized that the Court also rejects any bright-line rule that all dismissals without prejudice render a claimant a "prevailing party" under the Hyde Amendment. Instead, this question must be answered considering the facts and circumstances of each case.

12. Although the Court finds that Mr. Gardner is a prevailing party, the Court rejects certain of his arguments on this issue. Specifically, Mr. Gard-

## IV

■ The EAJA also provides that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in this action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection." 28 U.S.C. § 2412(d)(1)(B). The Government claims that Mr. Gardner is not eligible to receive fees on the counts dismissed without prejudice because no "final judgment" has been entered on those counts.

The United States contends that the EAJA definition of "final judgment" does not apply because the Hyde Amendment only incorporates the statute's "procedures and limitations" and not its definitions.[13] Accordingly, the United States contends that a dismissal without prejudice is not a final judgment in a criminal case. *See Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956) (stating that the dismissal of an indictment without prejudice is not a "final judgment"). Alternatively, the Government contends that even if the EAJA's definition of "final judgment" applies, a dismissal without prejudice does not meet this definition since the Government can refile the same charges at a later date.

In contrast, Mr. Gardner argues that there is a "final judgment" because the Government has stated that it will not prosecute him again. Alternatively, Mr. Gardner argues

that even if there was not a "final judgment" in this case, he is entitled to attorneys' fees for what he has prevailed on thus far. *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866, (1989) (stating that a prevailing party can recover fees *pendente lite* under § 1988 when a party prevails on some, but not all, of the claims of the litigation).

For the reasons previously discussed, the Court finds that the EAJA definition of a "final judgment" is incorporated into the Hyde Amendment. Using this term, the Court further finds that, under the facts present here, both the dismissals with and without prejudice are final judgments under the Hyde Amendment.[14] If the Court were to accept the Government's position that a dismissal without prejudice is never a "final judgment" under the Hyde Amendment, then Mr. Gardner's only alternative would be to wait to request attorneys' fees until the statute of limitations on each of the charges had expired. This result is inconsistent with both logic and the purpose behind the statute, which is to deter vexatious governmental conduct.[15]

Instead, in the instant case, even though certain counts of the superseding indictment were dismissed without prejudice, the Government has made an express representation that Mr. Gardner will not be prosecuted again for the dismissed charges. Criminal practice is replete with examples when an individual is free after the prosecution has declined to retry a criminal case.[16] Thus, in

ner claims that he is a prevailing party because he reached a settlement agreement with the Government and that a dismissal without prejudice based upon a settlement renders a party a prevailing party. The Court finds that there is not a sufficient basis upon which to conclude that a settlement agreement was reached in this case and that even if some understanding was reached, there was no consideration on the part of Mr. Gardner that would render such an understanding a legally binding agreement.

13. The EAJA defines a "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G).

14. There seems to be no dispute that the Court's dismissal of the three counts with prejudice are final judgments that are not appealable by the Government. The time in which the Government could have appealed the dismissal of these

counts expired thirty days following the date of dismissal. Fed. R.App. P. 4(b).

15. The Court acknowledges the "unusual definition" of "final judgment" in the EAJA, which includes the language "final and not appealable." As the Supreme Court has stated, the definition of final judgment was added to § 2412 by the 1985 amendments in order to resolve a split in the courts of appeals as to when the time for applying for attorneys' fees would commence. With the definition of "final judgment," Congress intended the EAJA filing period to begin only after the time for taking an appeal from the district court judgment had expired, rather than immediately after judgment was entered. *See Melkonyan v. Sullivan,* 501 U.S. 89, 95–96, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

16. *See, e.g.,* Laurie Asseo, *U.S. Drops Case Against North–He Hails "Total Exoneration,"* Chi. Sun–Times, Sept. 16, 1991, at 1; Jane Gross, *Conviction Canceled. She is Free for the*

the instant case, the purpose of the statute and the express representation of the Government that Mr. Gardner will not be prosecuted again [17] renders the instant dismissals, both with and without prejudice, to be final judgments under the Hyde Amendment.

## V

■ Another requirement incorporated into the Hyde Amendment is the provision in the EAJA that limits fee awards to "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Moreover, § 2412(d)(1)(B) provides that a prevailing party must show in the fee application that he "is eligible to receive an award" of fees. The Government claims that the Court must deny Mr. Gardner's fee application since he did not demonstrate his eligibility to receive fees by asserting that his net worth is under $2,000,000. Mr. Gardner contends that his failure to allege his net worth in the application is not a jurisdictional defect. *See Lee v. Johnson*, 799 F.2d 31, 35 n. 4 (3d Cir.1986) (holding that a technical deficiency in a fee application, such as a party's net worth, could be cured after the expiration of the statute's time period).

At the hearing on this matter, Mr. Gardner submitted an affidavit stating that at all times from the filing of the initial indictment in this case to the present, his net worth has been less than $2,000,000, and the Government has not contradicted this evidence. The Court finds that the failure to allege net worth in his application is not a jurisdictional defect. The Court further finds that Mr. Gardner has satisfied the net worth requirement of the Hyde Amendment through his affidavit on the matter.

## VI

Having satisfied the above requirements for a party to recover attorneys' fees under the Hyde Amendment, the Court must pro-

ceed to determine whether "the position of the United States was vexatious, frivolous, or in bad faith." [18] The Supreme Court has described "vexatious" conduct as being "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (construing an award of attorneys' fees under Title VII). Likewise, the Tenth Circuit has defined vexatious, as contained in 28 U.S.C. § 1927, as attorney "conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc) (also citing cases from other jurisdictions that award fees under § 1927 for conduct that is cavalier, reckless or in bad faith, or with indifference to the law). *See also* Black's Law Dictionary 1565 (6th ed.1990) (defining "vexatious" as "[w]ithout reasonable or probable cause or excuse"); H.R. Conf. Rep. No. 105–405 (1997), 1997 WL 712946 (stating that the Hyde Amendment "conferees understand that a grand jury finding of probable cause to support an indictment does not preclude a judge from finding that the government's position was vexatious, frivolous or in bad faith.").

In the instant case, Mr. Gardner contends that in determining whether the "position of the United States" is vexatious, the Court should examine both the conduct of the Department of Justice and the conduct of the Internal Revenue Service. The EAJA defines the "position of the United States" to mean

in addition to the position taken · by the United States in the civil action, the action or failure to act *by the agency* upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in

---

*First Time in 25 Years*, N.Y. Times, May 28, 1998, at B1.

**17.** In addition to the express representation that Mr. Gardner will not be prosecuted again, the Court again observes the Hyde Amendment's lack of concern with the precise form in which the citizen prevails over the prosecution. *See supra* note 10.

**18.** The EAJA places the burden of proof on the Government to demonstrate that the prevailing party is not entitled to attorneys' fees. *Estate of Smith v. O'Halloran*, 930 F.2d 1496, 1501 (10th Cir.1991). Since the Hyde Amendment expressly declines to incorporate the EAJA's burden of proof, the prevailing criminal defendant is required to demonstrate his entitlement to attorneys' fees under the Amendment.

which the party has unreasonably protracted the proceedings.

28 U.S.C. § 2412(d)(2)(D) (emphasis added).

In *Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the Supreme Court, in examining this EAJA definition, held that the "fact that the 'position' is again denominated in the singular, although it may encompass both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made." *Id.* at 159, 110 S.Ct. 2316. Mr. Gardner contends that since "position" is used in the procedure portion of the EAJA, it is thus incorporated into the Hyde Amendment. He also asserts that since both the Hyde Amendment and the EAJA require fees to be paid by an "agency," the "position of the United States" must include the conduct of the IRS, since the Department of Justice is not an "agency."

In contrast, the Government argues that the term "position of the United States" in the EAJA is not a "procedure or limitation" and is therefore not incorporated into the Hyde Amendment.[19] Specifically, the Government argues that there is no "criminal case" until a grand jury returns an indictment against a defendant and that the "position of the United States" refers to the Government's litigating position after the defendant has been charged, Govt.'s Br. at 16, and therefore only the litigating position

of the Department of Justice, not the conduct of the IRS, is relevant.

The Government further argues that in determining whether the position of the United States was vexatious, a court may consider only the record developed in the criminal case, which is limited to objective documentary evidence such as transcripts or pleadings or grand jury testimony. The United States bases this argument on 28 U.S.C. § 2412(d)(1)(B), which states that the determination of whether the Government's position is substantially justified "shall be determined on the basis of the record ... which is made in the civil action for which fees and other expenses are sought." *Id.* The Government contends that this provision is a "procedure" incorporated into the Hyde Amendment, thus requiring the Court to examine only the record developed in the criminal case.[20] Mr. Gardner disputes this assertion by noting that the Hyde Amendment permits the Court to review evidence outside the record.[21]

### A

For the reasons discussed above, the Court finds that the "position of the United States" is a procedure or limitation incorporated into the Hyde Amendment. Accordingly, in accordance with the EAJA definition, the term "position of the United States" includes the activities of the "agency" involved in this matter, and is not limited to the litigating position taken by the Department of Justice. The Court further finds

**19.** The Court observes that the United States has argued in another case, *United States v. Nunziato*, No. 97cr2104–JM/IEG (S.D.Cal. March 23, 1998), that this EAJA definition is a "procedure" incorporated into the Hyde Amendment. *See* Government's Response and Opposition to Defendant's Motion for Attorney's Fees Pursuant to the "Hyde Amendment."

**20.** The Government argues that only the record of the criminal case should be examined, pursuant to § 2412(d)(2)(B). The last sentence of this section provides in its entirety as follows:

Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

The Government contends that the parenthetical phrase has no application to a claim under the Hyde Amendment since the definition of the "position of the United States" in § 2412(d)(2)(D) is not incorporated into the Hyde Amendment. Since the Court has determined that the EAJA definition of the "position of the United States" is incorporated into the Hyde Amendment, the Court also finds that this parenthetical portion of § 2412(d)(2)(B) applies to the Hyde Amendment. Thus, the Government's contention is in this regard is rejected.

**21.** The Hyde Amendment expressly allows the Court to review evidence "ex parte and in camera," which evidence may include, but is not limited to, "classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury."

that the Internal Revenue Service is an "agency" for purposes of the Hyde Amendment. The EAJA explicitly states that "in addition to the position taken by the United States in the civil action," the position of the United States includes "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). Thus, the EAJA specifically contemplates that the Court will consider actions and events prior to the initiation of litigation. In the instant case, such actions and events prior to the initiation of litigation include the conduct of the IRS.[22]

### B

■ Having determined that the conduct of the investigating agency is included in the "position of the United States," the Court next addresses what constitutes the "record" in determining whether the Government's position was vexatious, frivolous, or in bad faith. In making this determination, the Court notes that there are at least three categories of infirm governmental conduct that could be considered vexatious, frivolous, or in bad faith. In the first category, there is conduct that is clearly unsupported by law. The second category of infirm conduct would be conduct that is clearly unsupported by facts. Third, use of the charge for wrongful purposes can be considered conduct that is vexatious, frivolous, or in bad faith. This third category necessarily entails an examination of the actions and events prior to the formal filing of the indictment.

■ In the instant case, the conduct allegedly unsupported by law would be the filing of the bankruptcy counts in the first indictment, which prosecuted Mr. Gardner for the act of filing bankruptcy as an unlawful evasion of his tax responsibility. The conduct in the second category, that is the conduct allegedly unsupported by facts, would be the charge of count eleven in the first indictment, which asserts that Mr. Gardner did not report ownership of a house in his bankruptcy proceeding, even though the house in question was owned by his wife. In the instant case, the alleged conduct in the third category would be the investigation and prosecution of Mr. Gardner for tax offenses after he filed bankruptcy in retaliation for this act and in furtherance of a personal vendetta against him by IRS agents.

■ The Court concludes that the scope of the record in any Hyde Amendment case must be determined by a review of all the facts and circumstances. Under the facts of this case, the Court finds that the objective record establishes a sufficient basis of infirm governmental conduct in the first two categories to justify further inquiry into the litigating position of the Government in this matter, including the activities that shaped such litigating position. Thus, the Court finds that the Hyde Amendment allows the Court to examine the conduct of both the Department of Justice and the Internal Revenue Service and that there is a sufficient basis in this case to justify such an examination.

### VII

■ Having determined that a comprehensive examination of Government conduct should occur, the Court next addresses the particular discovery that Mr. Gardner seeks in this case. Mr. Gardner asks the Court to conduct an evidentiary hearing on the matters raised in his application for fees, particularly with respect to the appropriateness of the hourly rates and the reasonableness of the time spent in the litigation. Mr. Gardner also requests that the Court allow him to conduct discovery prior to such evidentiary hearing with respect to certain types of evidence, including internal IRS reports, memoranda of witness interviews, internal Depart-

---

22. At the hearing on this matter, the Government claimed that the Hyde Amendment could never apply to a case of IRS harassment. Based on the plain language of the law, the legislative history, and the clear intent expressed by Representative Hyde, the Court rejects this claim. Further, the Court observes that recent Senate hearings on IRS reform suggested, without yielding a clear resolution of the issue, that at least one Senator also believes the Hyde Amendment is capable of redressing IRS misconduct. Senator Dale Bumpers stated:

> I think under existing law, and certainly under the Hyde Amendment, you would be entitled to attorney fees if you were-I forget the exact language, something to the effect that if you have been frivolously or vexatiously charged and tried, you are entitled to attorney fees.

143 Cong. Rec. S12097–01, S12099 (statement of Sen. Bumpers).

ment of Justice documents, depositions of several IRS agents, and depositions of the United States Attorney and an Assistant United States Attorney.

The Government objects to Mr. Gardner's request for discovery, contending that the request for fees should be based upon the record in the criminal case and not on the Government's internal deliberative processes. Further, the Government claims that any discovery of internal documents must be based on the strict discovery standards for a motion to dismiss for selective prosecution. *See United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 1488, 134 L.Ed.2d 687 (1996) (stating that a defendant must show "some evidence tending to show the existence of" a selective prosecution claim before obtaining discovery). Finally, the Government reasserts that the motive or intent of the IRS is irrelevant to the fee application because the "position of the United States" under the Hyde Amendment involves exclusively the position of the Department of Justice and not the actions of the IRS or any other department or agency. Govt.'s Br. at 23.

The Hyde Amendment allows the Court, "for good cause shown" to "receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal." The Government contends that, under the Hyde Amendment, a court is limited to matters on file or in the trial transcript and that in extraordinary cases a court may only receive from the Government (but not order the production of) the items listed in the parenthetical portion of the statute. The Government further contends that this parenthetical information is a "shield" that the Government can use to rebut evidence presented by a defendant and cannot be used affirmatively to develop information for the purpose of assessing a claim of vexatiousness. These contentions are too extravagant to be maintained.

The Court finds that, just as the Hyde Amendment expressly shifts the burden of proof to the defendant,[23] the Hyde Amendment also expressly contemplates an expansion of the record traditionally available to the Court for the purpose of assessing an applicant's claim. First, the Court rejects the Government's assertion that the Court is limited to evidence listed in the Hyde Amendment parenthetical. There is nothing in the plain language or the legislative history to support this narrow view of the Amendment. The Court further rejects the Government's claim that such additional evidence can only be examined upon voluntary production by the Government in rebuttal of some claim by Mr. Gardner. The Government has produced no authority that would limit the evidence the Court can receive in that manner and such a construction is inconsistent with what the statute seeks to achieve.

■ At the same time, however, the Court rejects Mr. Gardner's request to conduct depositions of IRS agents and United States Attorneys. There is also no authority to support the view that Hyde Amendment applicants should have either sweeping access to sensitive materials or broad powers to compel testimony. To the contrary, a careful reading of the Amendment suggests that Congress was aware of the potentially invasive effect of the statute and sought to put in place an ex parte and in camera review procedure to protect against the ill-effects of any such invasion. Thus, the Court finds that the Hyde Amendment vests in the Court both the responsibility and the authority to develop the facts in a manner warranted by the circumstances of the case for the purpose of determining whether the conduct of the United States was "vexatious, frivolous, or in bad faith." The Court will proceed according to this mandate.

## VIII

Based on the above, the Court directs that the Government shall produce to the Court in camera the following items of evidence that were either prepared, transmitted, or dated

---

**23.** The EAJA places the burden of proof on the Government to show that its position was substantially justified.

during the period of January 12, 1995, the date Mr. Gardner filed bankruptcy, through January 5, 1998, the date on which the United States moved to dismiss all charges against Mr. Gardner:

1. All internal Internal Revenue Service documents or reports referring or pertaining to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax Service, or Gardner's Used Books & Comics.

2. All internal Department of Justice documents or reports referring or pertaining to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax Service, or Gardner's Used Books & Comics.

3. All investigation and/or prosecution policies of the Internal Revenue Service and the Department of Justice that refer or pertain to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax Service, or Gardner's Used Books & Comics.

The Government is ordered to produce these above items to the Court under seal no later than August 14, 1998.

In ordering the in camera production of these materials, the Court is sensitive to the high standards that apply to the analogous claim of prosecutorial vindictiveness, *Armstrong*, 116 S.Ct. at 1488, and believes that similar standards apply to a production of documents under the Hyde Amendment. Further, the Court notes this case is in a no less unique and narrow band of cases and accordingly plans to proceed in a measured and prudent manner before ordering the Government to produce any material whatsoever to Mr. Gardner.[24] This will include full opportunity for the United States to be heard ex parte, if required, in accordance with the procedures set forth in the Amendment. In sum, the Court believes that the review of the above materials is necessary for the Court to discharge its obligation under the Hyde Amendment to determine whether the Government's actions were vexatious, frivolous, or in bad faith, and that the in camera and ex parte production of these items is justified by the record and facts currently before the Court.[25]

Following in camera review of these items, the Court will conduct further hearings in this case to determine the appropriate manner in which to proceed on Mr. Gardner's motion for recovery under the Hyde Amendment.

## IX

The primary legal conclusions of the Court may be summarized as follows:

1. The plain language and the legislative history of the Hyde Amendment indicates that the statute seeks to apply the EAJA to the fullest extent possible to the criminal context. Consistent with this guiding principle, the Hyde Amendment imports the definitions of the EAJA under its "procedures and limitations" clause, since such definitions

---

**24.** In this regard, the Court observes that the Hyde Amendment, like the EAJA, is a waiver of sovereign immunity to be strictly construed in favor of the United States. *See Olenhouse v. Commodity Credit Corp.*, 922 F.Supp. 489, 491 (D.Kan.1996).

**25.** The Court observes that in dealing with selective prosecution and prosecutorial vindictiveness claims, other courts have ordered broad discovery by the Government, often ordering production to the opposing party, as well as evidentiary hearings. *See* Anne Bowen Poulin, *Prosecutorial Discretion & Selective Prosecution: Enforcing Protection After* United States v. Armstrong, 34 Am.Crim. L.Rev. 1071, 1094 n. 103 (1997) (collecting cases in which discovery has been ordered). *See also Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11, 18–19 (D.D.C. 1997) (directing IRS to provide to plaintiffs reports and statistics, policies on investigations,

and IRS letter rulings and technical advice memoranda); *United States v. Figueroa–Rocha*, 1995 WL 253050, at *3 (N.D.Cal. Apr.27, 1995) (unpublished) (ordering in camera production of Department of Justice prosecution policies and other statistical reports); *United States v. Napper*, 553 F.Supp. 231, 234 (E.D.N.Y.1982) (ordering production of statistics, policies, and communications with foreign officials either to court or opposing party); *United States v. Kahl*, 583 F.2d 1351, 1354–55 (5th Cir.1978) (upholding an evidentiary hearing and in camera review of narratives of IRS investigations); *United States v. Carson*, 434 F.Supp. 806, 808 (D.Conn. 1977) (ordering evidentiary hearing and in camera production of internal Department of Justice memoranda); *United States v. Berrios*, 501 F.2d 1207, 1212 (2d Cir.1974) (upholding an in camera review of government memorandum recommending prosecution).

**1298**

clearly constitute limitations, as that term is used in the Amendment.

2. Mr. Gardner is a "prevailing party" in this action based upon the totality of the circumstances, the litigation chronology, and the fact that Mr. Gardner won the relief that he sought. In this regard, the Court rejects the Government's contention that to be a prevailing party under the Hyde Amendment a defendant must secure an acquittal or a dismissal with prejudice as to all or nearly all counts.

3. Under the facts and circumstances of this case, the dismissal of all counts, some with prejudice and others without prejudice, constitutes a "final judgment" as that term is used in the Hyde Amendment. This conclusion is supported both by the purpose of the Hyde Amendment and the accepted view of finality in the criminal law pursuant to the Government's statement that Mr. Gardner would not be prosecuted again.

4. The conduct of the IRS in connection with the investigation and prosecution of Mr. Gardner by the Department of Justice may be examined under the Hyde Amendment to determine whether the position of the United States in this matter was vexatious, frivolous, or in bad faith. In this regard, the Court rejects the Government's contention that the Hyde Amendment applies only to the Department of Justice, which brought the prosecution, and can never apply to the IRS or any other agency of the United States. The view that the Hyde Amendment can never apply to the IRS is unsupported by the plain language of the Amendment, unsupported by relevant legislative history, and inconsistent with the purpose of the Amendment.

5. For purposes of the instant action, the "record" includes not only the record of actions by the Department of Justice, but also actions by the IRS, which are to be examined in accordance with the ex parte and in camera procedures expressly set forth in the Hyde Amendment. In this regard, the Court rejects the Government's contention that the record is limited to public information on file in the criminal case. The Court further rejects the Government's contention that the Court cannot compel the production of pertinent information under the Hyde Amendment, but rather is empowered only to "re-ceive" such information as the Government chooses to produce voluntarily in rebuttal to arguments by a claimant under the law.

For the reasons set forth above, Mr. Gardner's motion for assessment of attorneys' fees (Docket # 73) and Mr. Gardner's motion for discovery (Docket # 78) are hereby granted in part.

IT IS SO ORDERED.