**UNITED STATES of America, Plaintiff,**

v.

**William Harvey AUBREY; Gloria Dale Lewis; Brenda Bernadette Todd; Scott F. Sherburne; Cynthia Cecile Kipp; Aloysius Paul Potts; Marlene June Bear Walter; Joseph J. Mckay; Lee Roy Wilson; Donald Lee Wilson; Colleen Catherine Wilson; Lodgbuilder Management, Inc.; and Blaze Construction, Inc., Defendants.**

No. CR 98–11–GF–DWM.

United States District Court, D. Montana, Great Falls Division.

Nov. 10, 2003.

Ward E. Taleff, Great Falls, MT, for Aubrey.

Patrick Flaherty, Great Falls, MT, for Sherburne.

John Smith, Missoula, MT, for Blaze Const.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Defendants William Aubrey, Scott Sherburne, and Blaze Construction, Inc. ("Blaze") sought attorneys' fees under the Hyde Amendment, claiming that they had been vexatiously prosecuted by the United States. Applying the vexatious standard set forth in *United States v. Holland,* 34 F.Supp.2d 346, 364 (E.D.Va.1999), the Court awarded attorneys' fees to Sherburne and Blaze, but denied an award of fees to Aubrey.[1]

On appeal, the Ninth Circuit held the vexatious standard used by this Court was erroneous because it "require[d] too much of the United States." *United States v.*

*Sherburne,* 249 F.3d 1121, 1127 (9th Cir. 2001). The Ninth Circuit determined that the appropriate vexatious standard incorporates both subjective and objective factors. *Id.* at 1126, n. 4. Thus, a defendant is entitled to attorneys' fees under the Hyde Amendment "when the prosecution was [ (1)] unwarranted because it was intended to harass [(the subjective factor)] and [ (2)] without sufficient foundation [(the objective factor)]. The Ninth Circuit reversed and remanded the case with directions that this Court apply the subjective/objective vexatious standard. *Id.* at 1127. On remand, the parties and the Court agreed that the first issue for determination is whether Defendants are entitled to conduct discovery to support a second argument for an award of attorney's fees.

### II. Analysis

In light of the Ninth Circuit's ruling, the Court issued an order requiring briefing on three issues.[2] As a threshold issue, the Court must consider whether the Hyde Amendment allows discovery.

### A. Does the Hyde Amendment allow Defendants to conduct discovery?

Defendants contend that to prove the United States vexatiously prosecuted them, they must conduct discovery of government files. According to Defendants, the government's files provide the only means for proving their case. The United States counters that information contained within their files is both privileged and confidential and that Defendants have not shown good cause to order an *in camera*

---

1.  The vexatious standard applied by the Court was whether "a reasonable prosecutor should have concluded that the applicable law and the available evidence were insufficient to prove the defendants' guilt beyond a reasonable doubt."

2.  The Court asked the parties to address: (1) whether good cause exists; (2) the nature of the discovery to be conducted; and (3) whether an evidentiary hearing is necessary.

or *ex parte* viewing of the United States' files.

The Hyde Amendment provides that

> [t]o determine whether or not to award fees and costs under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include submission of classified evidence or evidence that reveals or might reveal the identify of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal
>
> . . . .

18 U.S.C. § 3006A. There are few cases interpreting the Hyde Amendment; only one case discusses whether it allows a defendant to obtain discovery.

In *United States v. Lindberg,* the district court denied Lindberg's request for discovery related to his Hyde Amendment motion for fees. Lindberg had requested discovery that included production of investigative documents and depositions of IRS agents. 220 F.3d 1120, 1122 (9th Cir.2000). Lindberg argued that discovery was necessary because government documents would show that the government knew it did not have enough evidence to convict him, yet persisted with the prosecution. The district court denied Lindberg's request because "his claims centered on the government's lack of proof" and he "failed to point to any evidence that the government was motivated by improper considerations." The district court did not discuss whether the Hyde Amendment allows discovery; rather, it based its deci-

sion on Lindberg's failure to establish good cause. The Ninth Circuit held that the district court did not abuse its discretion in finding Lindberg failed to show good cause. *Id.* at 1126.

In *United States v. Truesdale* the Fifth Circuit held that the Hyde Amendment does not provide for discovery and a hearing as a matter of right, but the court specifically refused to consider whether the Hyde Amendment allows discovery or a hearing at all. 211 F.3d 898, 907 (5th Cir.2000). In dicta, however, the court indicated that the Hyde Amendment's ex parte and in camera review provision is likely intended as a defense mechanism to help the prosecution rebut a request for fees, not as a discovery provision for the defense.[3]

Contrarily, in *United States v. Gardner,* the District Court for the Northern District of Oklahoma determined that the Hyde Amendment allows the court to expand the record when considering a motion for attorney's fees. 23 F.Supp.2d 1283 (N.D.Okla.1998). *Gardner* is the only case to squarely address whether discovery is allowed in a Hyde Amendment request for fees. The facts there are similar to those in this case. In *Gardner,* Defendant Richard Gardner was charged with multiple counts each of assisting in the preparation of false and fraudulent tax returns, fraudulently concealing assets during a bankruptcy proceeding, and bankruptcy fraud. Before trial, the government moved to dismiss many of the counts. The government then asked the

---

**3.** In *Truesdale,* the defendants did not request discovery or a hearing, but argued on appeal that they were entitled to both before the district court could rule on their motion for fees. In response to the defendants' argument that Congress intended that claimants should have access to evidence, while confidential evidence would be reviewed in camera, the Fifth Circuit stated

> [i]t appears the provision for in camera review of evidence was included to enable the government to defend itself against Hyde Amendment motions and at the same time protect confidential information.
>
> 211 F.3d at 907.

court to allow its expert to summarize the testimony of all of the government's witnesses. The court ordered the government to produce an expert report for its witness. Rather than do so, the government dismissed all remaining charges against Gardner. *Id.* at 1286.

Following the dismissal, Gardner filed a motion for fees under the Hyde Amendment. Gardner argued that he was entitled to conduct discovery to support his motion. *Id.* at 1287. Specifically, Gardner asked for "internal IRS reports, memoranda of witness interviews, internal Department of Justice documents, depositions of several IRS agents, and depositions of the United States Attorney and an Assistant United States Attorney." *Id.* at 1295–96. The government argued that in determining whether the government's litigation position was vexatious, the court could consider only the record developed, which included transcripts, pleadings, and grand jury testimony. *Id.* at 1294.

The court performed a two-part analysis. It first looked at whether "the objective record" justified further scrutiny. *Id.* at 1295. After it decided there were sufficient reasons for further inquiry, the court addressed the scope of that inquiry and considered the scope of discovery requested by Gardner. The government objected to any discovery. It argued that a decision on the fee request should not be based on its "internal deliberative processes." *Id.* at 1296. The government contended that the part of the Hyde Amendment that allows a court to "receive evidence ex parte and in camera" is intended to provide the government with "a 'shield' that the Government can use to rebut evidence presented by a defendant[, but] . . . cannot be used affirmatively to develop information for the purpose of assessing a claim of vexatiousness." *Id.*

The court rejected the government's argument and found instead that the Hyde Amendment "expressly contemplates an expansion of the record traditionally available to the Court for the purpose of assessing the applicant's claim." *Id.* The court found that the government failed to produce any authority for its assertions that the Court was limited to evidence listed in the Hyde Amendment parenthetical or that the Court is entitled to review only that evidence voluntarily presented by the government. *Id.* However, the court also rejected Gardner's request to depose IRS agents. Ultimately, the court ordered the government to produce for in camera review all internal IRS and DOJ documents and policies related to its investigation of Gardner. *Id.* at 1297. Before the court would produce any documents to Gardner, however, the court indicated it would review them and, if necessary, allow the United States to be heard ex parte. *Id.*

The meaning of the provision in the Hyde Amendment that allows the court to receive evidence ex parte and in camera is ambiguous. The interpretation by the district court in *Gardner* and that by the Fifth Circuit are both plausible. Assuming without deciding that the Hyde amendment permits discovery, the Defendants have failed to establish good cause for allowing discovery under the *Lindberg* standard as discussed below.

**B. If discovery is available, have Defendants established good cause to be entitled to discovery?**

■ Defendants ask for grand jury records; OIG and FBI witness interviews and field notes; HUD records; internal HUD, OIG, FBI and U.S. Attorney correspondences and e-mails; impeachment material on witnesses; and U.S. Attorney notes. Defendants contend these materials will show that the United States knew or should have known that they had not com-

mitted the crimes charged. Defendants further allege that these materials will show the United States deliberately ignored exculpatory evidence and badgered witnesses to accept its point of view, all to "make an example" of defendants.

■ Assuming discovery is available, it is within the Court's discretion to determine whether Defendants have established good cause. *Lindberg,* 220 F.3d at 1126. As with other aspects of the Hyde Amendment, there is little guidance as to any minimum standards a party must meet to establish good cause. In *Lindberg,* however, the Ninth Circuit noted that the defendant in that case was not entitled to discovery because he did not establish that the government was motivated by "improper considerations." Instead, the defendant had based his discovery request on his argument that the government lacked sufficient evidence to convict. *Id.* Because a claim of lack of evidence to convict is not enough to establish that the government's litigating position was vexatious, frivolous or in bad faith, a motion for discovery apparently should not be based on such a claim either. *See id.*

Defendants contend that their case is distinguishable from *Lindberg* because, unlike the defendant there, Defendants' argument here "is based on more than a nebulous, speculative claim of 'lack of proof' " and is based instead

> on what the government knew and didn't disclose regarding the background of the housing dispute which would exonerate the Defendants, what the government knew which established there was no fraud or criminal conduct intended by the Defendants and what influences were exerted on the government to bring charges despite information that no crime had occurred.

In *Lindberg,* the defendant argued that the government knew or should have known that there was not enough evidence to convict him, but persisted with the prosecution to obtain his apartment by forfeiture and to gain leverage against his mother in hopes that she would accept a plea. Defendants here make four main arguments for why the have established good cause. First, they argue that the government had little chance of success because "the weight of the evidence demonstrated that no crime had been committed." Defendants proceed to detail evidence that undermined their guilt. However, like in *Lindberg,* this argument goes to the sufficiency of the evidence. Under *Lindberg,* such a contention is not a basis for discovery.

Second, Defendants argue that the investigation strategy used by the government suggested "ill motive and a biased investigation." In support of this argument, Defendants generally contend that "[m]any of the witnesses interviewed by government agents stated that they were intimidated and threatened during the interviews … and confirmed government representatives made repeated statements that they were going to 'get' Bill Aubrey." Defendants do not identify any particular witness who was threatened or intimidated, nor do they say how obtaining discovery will establish an ill motive or biased investigation. General allegations of heavy-handed investigation techniques are probably not enough to allow Defendants broader access to government files. Further, Defendants could have obtained affidavits from witnesses who were allegedly threatened to bolster their request for discovery and their overall claim of vexatious prosecution. However, they did not do so. Thus, it appears that Defendants want to conduct a fishing expedition of government files.

Third, Defendants argue that internal government records will reveal that investigators and prosecutors disregarded ex-

culpatory evidence. Specifically, Defendants contend that statements made to the FBI by Gerry Fritts, Ruth Caldwell, and Don Wilson contained exculpatory information that was not disclosed to Defendants. Defendants also contend that Andrew Heald's opinions should have been viewed skeptically by government agents and prosecutors.

Based on Defendants' accounts in their briefing, it appears that Fritts, Ruth and Caldwell essentially denied that they were aware of any wrongdoing. This is not enough to warrant discovery. Likewise, as to Heald, Defendants admit that the Court already reviewed his file and found that it did not contain any exculpatory evidence. Defendants argue that "it is reasonably believed" that the government's internal records will contain information about witnesses the government chose not to use at trial because their information "was of no benefit to the prosecution or it was deemed unnecessary to present." This "reasonable belief" does not appear to be supported by objective facts. Again, it appears Defendants want to conduct a fishing expedition to support their claims.

Finally, Defendants argue that the government's intention to pursue Aubrey in other forums indicates a bad faith, vexatious and frivolous motive. Defendants do not expand on this argument. Generally, however, lack of success in a criminal forum does not preclude continuation of non-criminal proceedings. This is insufficient to warrant discovery.

In short, Defendants' arguments in favor of obtaining discovery essentially challenge the sufficiency of the evidence against them. They do not establish that the government was motivated by improper considerations or an intent to harass. Under *Lindberg*, this is not enough to obtain discovery.

## III. Order

Accordingly, IT IS HEREBY ORDERED that the Defendants' requests for discovery (dkt # s 567,568 and 569) are DENIED.