UNITED STATES of America,

v.

Charles Thomas DICKERSON,
Defendant.

Criminal No. 97–159–A.

United States District Court,
E.D. Virginia.

Aug. 4, 1997.

Kathleen Kahoe, Asst. U.S. Atty., Alexandria, VA, for Plaintiff.

James Hundley, Fairfax, VA, for Defendant.

### MEMORANDUM OPINION

CACHERIS, Chief Judge.

This matter is before the Court on cross Motions of Defendant and the United States which ask this Court to reconsider its Order of July 1, 1997 granting in part Defendant Charles Thomas Dickerson's Motion to Suppress. For the reasons set forth below, both Motions are DENIED.

#### Facts.

Defendant was arrested on January 27, 1997 and subsequently charged with Conspiracy to Commit Bank Robbery, three Counts of Bank Robbery in violation of 18 U.S.C. § 2113(a) and (d), and three counts of Use of a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c). On July 1, 1997, this Court granted in part Dickerson's Motion to Suppress certain evidence. Specifically, the Court held that Dickerson's confession was elicited in violation of his rights protected by the Fifth Amendment, and that a search of his home was conducted in violation of rights protected by the Fourth Amendment. The Court's holding was based in part on its finding that Dickerson's in-court testimony was more credible than that of FBI Special Agent Christopher Lawlor.

In its Motion for Reconsideration, the Government introduces new affidavits that seek to undermine both the Court's holding that

Dickerson's rights were violated and the Court's finding that Agent Lawlor's testimony lacked credibility.[1]

### Standard of Review.

 As there is no provision in the Federal Rules of Criminal Procedure governing motions for reconsideration, the Court will be guided by the standard set in the Civil Rules. Federal Rule of Civil Procedure 59(e) allows "an aggrieved party to file a motion to alter or amend a judgment within ten days of its entry." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). "[C]ourts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law." *Id.* In examining the motion to reconsider, the Court is mindful of the fact that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). "In order to support a motion for reconsideration, 'the movant is obliged to show not only that ... evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered or produced such evidence at the hearing.'" *Boryan v. U.S.,* 884 F.2d 767, 771 (4th Cir.1989) (quoting *Frederick S. Wyle P.C. v. Texaco, Inc.,* 764 F.2d 604, 609 (9th Cir.1985)). Therefore, evidence brought to the Court's attention which was available to the movant prior to an entry of judgment is "not a basis for granting a motion for reconsideration as a matter of law." *Id.*

 It is within the sole discretion of the Court as to whether the granting of a motion to reconsider is appropriate. *Id.* at 771. A motion to reconsider cannot appropriately be granted where the moving party simply seeks to have the Court "rethink what the Court ha[s] already thought through— rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

### Analysis.

 In the present Motion, the Government has done little more than present new evidence without even arguing that the evidence now set forth was unavailable at the time of the hearing. This failure is fatal to the Motion. At the August 1, 1997 hearing of this Motion, the Government indicated that the Assistant United States Attorney had very little time to prepare Agent Lawlor for his earlier testimony;[2] that the Government anticipated that Agent Lawlor's testimony would sufficiently summarize the testimony of the other agents, whom the Government admits were available to testify but whom it chose not to present; and that Agent Lawlor did not review prior to the hearing the documentary evidence that ultimately undermined his testimony. According to the Government, "[Agent Lawlor] didn't obviously look at those documents, and he obviously wouldn't lie about it when it's documented like that. So I think that was just an error on his part." The Court does not sit to clean up a party's failure

1. In support of his Motion to Reconsider, Dickerson argues that the Court should suppress evidence obtained during the search of Dickerson's Oldsmobile Ciera, the car identified by witnesses as having been used in the Alexandria robbery. The Court based its ruling on both the eyewitness accounts and testimony of James Rochester. Dickerson now argues that Rochester's testimony is fruit of a tree tainted by Dickerson's constitutionally invalid confession. In light of the Fourth Circuit's ground breaking decision in *United States v. Elie,* 111 F.3d 1135 (4th Cir. 1997), this argument is without merit. Moreover, the search of the Ciera is sufficiently supported by the eyewitness accounts and the inevitable discovery doctrine. *See Nix v. Williams,* 467

U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Accordingly, Defendant's Motion for Reconsideration is DENIED.

2. Defendant's original Motion to Suppress was filed on May, 19, 1997. The Government responded on May, 23, 1997, and supplemented its response on May, 29, 1997. The hearing was held on May 30, 1997. The Government filed a supplemental memorandum on June 3, 1997.

At the hearing of this Motion, the Government affirmed the Court's observation that "this is one of those deals where they threw the case at [the AUSA] at 4:00 on the day before [the hearing]."

properly to gather, prepare, present, or argue its evidence.[3]

Aside from presenting incompetent evidence, the Government asks the Court to re-evaluate Agent Lawlor's testimony in light of the fact that he apparently broke his neck in a 1996 hockey accident and is thus unable to turn his head. The Court's assessment of Agent Lawlor's veracity was based on the content of his testimony and the cadence, tone, and inflection of his voice, and was aided by defense counsel's adept impeachment. The Court assumes that none of these factors was affected by his disability.[4] The district court is uniquely positioned to judge the credibility of a witness before it based on the witness's testimony and all of the evidence properly before it. However, the Court may only make this determination based on evidence that is actually presented.[5]

Because the Government has not proffered any new and heretofore unavailable evidence supporting reversal of this Court's July 1, 1997 Order, the Government's Motion for Reconsideration is DENIED. Because it finds no support in the law, Defendant's Motion for Reconsideration also is DENIED.

---

3. The Court notes that some of the evidence now brought forward more closely corroborates Dickerson's account of events than Special Agent Lawlor's. For example, Agent Wenko asserts that he had his weapon drawn when he confronted Dickerson. That is the material point that Dickerson's counsel was trying to elicit from Agent Lawlor at the hearing and about which Agent Lawlor denied knowledge. In addition, the Government's Motion misses the point regarding Agent Lawlor's assertion to Magistrate Judge Kenkel that a telephonic warrant (and an incomplete one at that) was necessary because Dickerson soon would be free to go home and destroy evidence. The Government clearly is correct in arguing that police are not required to arrest any suspect for whom they have probable cause. However, the Government may not use its volitional decision not to arrest as the basis for a claim of exigent circumstances.

4. The Government begins its plea for reconsideration by asserting that "[a]t stake here is not only our ability to bring Dickerson to book for multiple armed robberies, but also quite possibly an agent's career." More correctly, what is at stake here is the liberty of a citizen who is presumed to be innocent and whose constitutionally protected rights were breached by the government. At the end of the day, and regardless of the outcome of the trial of this case, Agent Lawlor will not spend the next several years in prison—Dickerson may.

5. While the Government's failure to properly bring its case may be unfortunate for both Agent Lawlor and the immediate interests of justice, the Court owes a greater and abiding duty to protect the judicial processes that in turn protect us all. The Court may not abandon this duty in deference to "its own sense of justice." *See United States v. Perkins,* 108 F.3d 512, 515 (4th Cir.1997).