UNITED STATES of America,
Plaintiffs,

v.

Richard Joyner HOLLAND, Richard Joyner Holland, Jr., Defendants.

No. 2:97cr139.

United States District Court,
E.D. Virginia,
Norfork Division.

May 18, 1999.

Robert J. Seidel, Jr., James A. Metcalfe, United States Attorney's Office, Norfolk, VA, William L. Finch, Department of Justice, Criminal Division—Fraud Section, Washington, DC, for plaintiffs.

James Crawford Roberts, Alan Dale Albert, Mays & Valentine, Norfolk, VA, Hunter Wilmer Sims, Jr., Kaufman & Canoles, Norfolk, VA, for defendants.

### OPINION AND ORDER ON GOVERNMENT'S MOTION FOR RECONSIDERATION

MORGAN, District Judge.

This matter is before the Court on the Government's Motion for Reconsideration. The Motion asks the Court to reconsider its Opinion and Order of February 3, 1999, in which the Court granted the Hyde Amendment petition of the defendants, Richard Joyner Holland, Sr. and Richard Joyner Holland, Jr. (together the "Hollands" or "Defendants"), and awarded the Hollands $570,658.00 in litigation expenses and costs. The parties agreed to submit this Motion to the Court on their respective briefs thereby waiving oral argument. The United States is referred to as the "Government" regarding this petition and as the "Prosecution" regarding the events leading up to the Hollands' acquittal. The Federal Deposit Insurance Corporation is referred to as the "FDIC." This Opinion and Order sets forth the Court's ruling and rationale.

### I. *Factual and Procedural History*

In light of the Court's recitation of the underlying facts in its February 3, 1999 Opinion and Order, the Court will forego any further statement of the facts and hereby incorporates by reference the facts as found in that Opinion and Order. On March 4, 1999, the Government filed a pleading entitled Motion for Reconsideration. The Defendants requested and received an extension of time in which to respond to the Government's motion. On March 25, 1999, the Hollands filed a joint response.

### II. *Standard of Review*

There is no provision in the Federal Rules of Criminal Procedure providing for motions for reconsideration. *United States v. Dickerson*, 971 F.Supp. 1023 (E.D.Va.1997) (Government moved for reconsideration of order granting in part defendant's motion to suppress). However, since Hyde Amendment proceedings are post-trial proceedings incorporating the Equal Access to Justice Act ("EAJA") and provide a civil remedy of money damages, the Court **FINDS** its decision upon the

Hyde Amendment claims to be in the nature of a civil proceeding. Accordingly, the Court will apply the Federal Rules of Civil Procedure in considering the Government's Motion for Reconsideration. Federal Rules of Civil Procedure 52(b), 59(b)(d) and (e) and 60(b) each address motions to reconsider or similar motions. The Government did not specify the rule or rules pursuant to which it sought reconsideration. However, Rule 52(b) and 59(b), (d) and (e) require the moving party to file such motions no later than 10 days after the entry of the judgment. In the instant case, the Government filed its Motion for Reconsideration 29 days after the entry of the Court's February 3, 1999 Opinion and Order. A motion pursuant to Rule 60(b) must be made "within a reasonable time." Therefore the Court will consider the motion as timely filed pursuant to Fed.R.Civ.P. 60(b).

Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ... (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged ... or (6) any other reason justifying relief from the operation of the judgment.

■ Rule 60(b) does not suggest a de novo review of the facts and legal arguments. A motion under Rule 60(b) is addressed to the sound discretion of the district court. *Square Construction Co. v. Washington Metropolitan Area Transit Authority,* 657 F.2d 68 (4th Cir.1981). Rule 60(b) "has invested federal courts with the power in certain restricted circumstances to vacate judgments whenever such action is appropriate to accomplish justice." *Compton v. Alton Steamship*

*Co., Inc.,* 608 F.2d 96 (4th Cir.1979), *citing, Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099 (1949). The remedy provided by Rule 60(b) is "extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Id.* As a threshold matter, "the movant must demonstrate the existence of a meritorious claim or defense." *Id.* at 71. In its consideration, the Court must balance the "competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." *Id.* Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue. *United States v. Williams,* 674 F.2d 310 (4th Cir.1982). "Where the motion is nothing more than a request that the district court change its mind," it is not authorized by Rule 60(b). *Id.*

The Court **FINDS** that the Government's arguments designated as 1, 2 and 3 in its motion raise no issues cognizable under Rule 60(b).[1] The Government argues that "we have focused here only on the extent to which the Court's February 3, 1999 Order raises issues under the Hyde Amendment that had not crystalized before." (Government's Motion at p. 22). The efforts of the Government to dress these issues in a different cloak does not create a Rule 60(b) issue. The Court will undertake to explain its rationale in concluding that it has already ruled upon these issues, as well as attempting to explain why the Government either misunderstands or misstates its rulings. Such misunderstandings or misstatements were rife in the Government's initial response to the petition dated June 26, 1998, but the Court only dealt with the more egregious examples in its February 3, 1999 Opinion and Order. One example of the Government's confusion is found when comparing the argument stated in its June 26, 1998 response with its argument upon the sub-

---

1. The notice issue raised in the footnote on page 23 of the Government's motion for re-

consideration does raise an issue cognizable under Rule 60(b).

ject motion; compare: "For example, in granting the defendant's motion for judgment of acquittal as to Count 23, a false statement to the FDIC, the Court in its written opinion filed April 30, 1998 discusses extensively its reasons for rejecting Sheeran's testimony, and (as an inevitable corollary) accepting as consistent and credible the testimony of the Marches." (Government Response at p. 29); *and* "A principal basis upon which the Court deemed the prosecution vexatious was its view that the government should have known that the witnesses it needed to establish the Hollands' criminal intent (principally Sheeran and, to a lesser extent, Dr. and Mrs. March) were 'incredible as a matter of law.'" (Government's Motion at p. 19). The Government thereby argues in one pleading that the Court found the Marches' testimony consistent and credible and argues in another pleading that the Court found their testimony incredible as a matter of law. In fact, the Court did not rule either that the Marches' testimony was "incredible as a matter of law" or that it was consistent and credible. The Court did observe that the testimony of Mrs. March was internally inconsistent:[2]

Court: In addition to that, the court admitted grand jury testimony.

Mr. Williams: Your Honor, I do understand that. All I'm doing now with reference to June March's testimony—and you can certainly mark it as rejected—I—because I believe that—because I disagree with you, I'm respectfully tendering to the court, even if you mark it as rejected, to be made any part of the record for the Court of Appeals the grand jury testimony of June March for October of 1994 and September 26, 1997, because I submit that if I am right, with all due respect, you—The Court of Appeals may say, no, Judge Morgan was right; but if I am right, and there is a conflict—

Court: Well, there is a conflict. The Court did not find that there wasn't a conflict. The Court found that there was an internal conflict in her grand jury testimony. Her testimony at the grand jury supported both sides depending on which portion of it you read.

(Tr. 8/19/98 hearing; p. 97. L. 5–22)

### III. *Analysis*

#### A. *Government's Constitutional Challenge to Court's Interpretation of the Hyde Amendment*

The Government first moves the Court to reconsider its application of the EAJA to the Hyde Amendment. According to the Government, the Court's decision to allow the Hollands to proceed pursuant to Section 2412(b) of the EAJA renders the Hyde Amendment unconstitutional as applied, because it abridges the separation of powers doctrine. The Government argues that the Court's interpretation allows courts to use the Hyde Amendment to "punish the executive or provide a windfall for defendants." The Government further asserts that because the Hyde Amendment is a waiver of sovereign immunity, it is to be strictly construed in favor of the United States. According to the Government, the Court's construction of the Hyde Amendment transgresses this canon of construction.

First, it should be repeated that Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue. The Government has not offered any new facts or evidence, but merely requests that the Court change its mind about its interpretation of the Hyde Amendment. This is not the purpose of a motion for reconsideration. Nevertheless, even if the Court were persuaded to reexamine its interpretation of the EAJA as incorporated into the Hyde Amendment, the Court would reach

---

**2.** Grand jury testimony used at trial was considered for purposes of the Hyde Amendment proceedings. However, the Court did not admit the grand jury testimony of witnesses who did not testify at trial.

the same conclusion it reached at the August 19 and 20, 1998 hearing and in its February 3, 1999 Opinion and Order.

■ As is appropriate in all cases which turn on statutory construction, the Court begins with the language of the statute. *Adams v. Dole,* 927 F.2d 771, 774 (4th Cir.1991). "If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Id., quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute is ambiguous, the court must then construe the statute in accordance with the applicable canons of construction. In the instant case, both the Hollands and the Government agreed on the record that the Hyde Amendment was not ambiguous, although their respective interpretations differed. The Court likewise concluded that the Hyde Amendment was not ambiguous and applied the statute to the facts of this petition.

■ "It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law." *United States v. Langley,* 62 F.3d 602, 605 (4th Cir.1995) (en banc). Thus, "absent a clear manifestation of intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." *Id.* In enacting the Hyde Amendment, Congress was presumed to have knowledge of the existing case law allowing petitioners under the EAJA to proceed under Section 2412(b) or (d). Moreover, "once Congress has waived sovereign immunity over a certain subject matter, we cannot assume the authority to narrow the waiver Congress intended." *Jones v. Brown,* 41 F.3d 634 (4th Cir.1994), *quoting United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). If the Court's award to the Hollands was grounded upon an unconstitutional invasion of the executive's prerogatives, it logically follows that an award under section 2412(b) of the EAJA would be similarly unconstitutional when the underlying litigation was civil in nature. There is no authority for such an argument. The Court awarded the Hollands that portion of their fees and expenses which would equal the amount spent defending their case after the point at which the Court found the prosecution to be vexatious.[3] Accordingly, the Court **FINDS** that this issue is not appropriate for reconsideration under Rule 60(b).

B. *Court's Ruling Regarding Government's Post Hoc Affidavits*

The Government's second argument states that the Court improperly refused to accept the post hoc affidavits proffered by the Government *because* the Government would not produce its contemporaneous notes documenting intra-government pre-trial conferences regarding the decision to prosecute the Hollands. Moreover,

---

**3.** In its motion, the Government argues that both of the Hollands were reimbursed by insurance for their legal fees and expenses. There has been no evidence that the Hollands were reimbursed by insurance. It does appear that both Hollands were conditionally reimbursed by the Bank, and, as the Government concedes, any recovery from this petition will be repaid to the Bank. However, this has no effect on the Court's findings with regard to the application of Section 2412(b) of the EAJA which was incorporated into the Hyde Amendment. The Hyde Amendment specifies only one instance in which a recovery is unavailable—where the defendant is represented by assigned counsel paid for by the public. Moreover, *United States v. Paisley,* 957 F.2d 1161 (4th Cir.1992) addressed the issue of whether attorneys fees were "incurred" pursuant to the language of Section 2412(d). That analysis is inapplicable to the instant case which granted recovery under Section 2412(b) of the EAJA which section does not contain the term "incurred." The award to the Hollands is hardly a windfall as it represents substantially less than the fees and expenses requested and no compensation for the seven years of investigation and prosecution which preceded the acquittal is permitted. It is a rare individual who possesses the human and financial resources to successfully oppose the relentless efforts of the several government agencies involved in this prosecution.

the Government asserts that "the extremely intrusive form of inquiry the Court designated here—the surrender of contemporaneous work-product notes on pain of banishing the only direct evidence of the executives intent—renders the Hyde Amendment unconstitutional as applied." (Government's Motion at p. 13).

It is first important to clarify exactly what the Court ruled it would and would not accept in its consideration of the Hyde Amendment petition. At the May 29, 1998 telephone hearing which the Court held with counsel, the Court stated:

I think an opinion by an attorney of that, if it was in writing before the trial or before the indictment, would perhaps be admissible. I'm not saying it would be. But it might be—I don't mean admissible, but it might be relevant to the government's decision and, therefore, something the Court should consider.

(May 29, 1998 Telephone Hearing, Tr. at p. 23, L. 20–25). The Court then went on to say:

For example, if the Government had some opinion, preindictment opinion, stating, you know, from somebody in the Justice Department stating that in their judgment that this justified an indictment and setting forth their reasons, that might be something the court would consider.

(*Id.* at p. 24, L. 18–23). The Court also made clear what it would not accept, and the Government, through its Assistant United States Attorney, did not object:

Court: Well, I can tell you, I don't want any after-the-fact affidavits from anybody.

Mr. Jaspen: That strikes me as being sensible, Your Honor.

I think the record, in my view, to the extent anything may be relevant beyond the trial record is the *antecedent* record, what it was that went up to the government's prosecution; and as the court suggested, is there something that really speaks to the good

faith, the frivolous or the frivolousness of the government's effort, or as the court also suggested, whether the defendant had something which, because of the nature of the proceedings here, they didn't have an opportunity to put on.

(emphasis added) (*Id.* at p. 26, L. 2–12). Thus, not only did the Court make the parties aware that it would not accept post hoc affidavits from either side, it notified them that it might consider such evidence as contemporaneous notes or documents which would tend to show the Government's justification for prosecuting the case. The Government agreed with the Court that the trial record and the record leading up to the trial were the most relevant evidence which the Court should consider in deciding the Holland's Hyde Amendment petition. The Court never conditioned its acceptance of the Government's post hoc affidavits on the Government's production of contemporaneous notes. The record establishes that the Court declined to consider post hoc affidavits from either party.

In its June 2, 1998 Order memorializing its rulings in the May 29, 1998 hearing, the Court stated:

Because there may be evidence relative to the fee application, the admission of which was not sought at trial, the Court will permit both parties to supplement the record. No grand jury testimony or after the fact affidavits shall be considered. Only items of evidence available at the time of trial, but not used for reasons acceptable to the Court will be considered.

Even though the Government agreed that the antecedent record would be relevant to the Hyde Amendment inquiry, the Court did not order either party to submit any supplementary evidence. It ruled that supplementary evidence might be considered so long as it was not in the form of post hoc affidavits or grand jury testimony which was not used at the criminal trial. The Court informed both the parties that

it would not accept post hoc affidavits. Contrary to the Court's Order, the Government filed post hoc affidavits and prohibited grand jury transcripts with its response. Although the Court granted both parties leave to supplement the record within set parameters, the Government did not offer any supplementary evidence except the two forms of evidence, post hoc affidavits and grand jury transcripts not used at trial, expressly prohibited by the Court. In this evidentiary context, only the post hoc affidavit issue is now raised by the Government. The Government knew, when it proffered the post hoc affidavits, that the Court would not accept them. At the August 19 & 20, 1998 hearing on the Hyde Amendment petition, the Government confirmed that contemporaneous notes existed which memorialized the Government's pre-trial motivations and justifications. At the August 19 & 20, 1998 hearing, the Government cited prosecutorial privilege as the reason for its failure to produce these contemporaneous notes. The argument that such notes were a prerequisite to the admission of the post hoc affidavits is of recent origin.

The case of *United States v. Hastings*, 126 F.3d 310 (4th Cir.1997), cited by the Government, is not applicable here. First, this Court did not require the production; it merely indicated such documents might be relevant evidence. Second, the issue in the *Hastings* case was the production of statements of agency policy which could be of universal import. The instant case involves only contemporaneous notes, and the reasons for the confidentiality of such notes reached a dead end with the Hollands' acquittal.

Affidavits which are "merely 'post hoc' rationalizations" have "traditionally been

found to be an inadequate basis for review," in the administrative law context. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *see also Maryland Wildlife Federation v. Dole*, 747 F.2d 229 (4th Cir.1984) ("The focal point for judicial review is the administrative record, not post hoc rationalizations or interpretations."). Moreover, the Hyde Amendment itself contemplates that a Court considering a Hyde Amendment petition may confidentially review sensitive prosecutorial information. Accordingly, the Hyde Amendment directs that "the court, for good cause shown, may receive evidence ex parte and in camera . . . and evidence or testimony so received shall be kept under seal." 18 U.S.C. § 3006A. At the May 29, 1998 telephone hearing, the Court also invited the Government to supplement the record so long as it did not offer post hoc affidavits or grand jury testimony not used at the criminal trial. (Tr. p. 29.L.12–15). The Government made no request to otherwise supplement the record or present evidence ex parte or in camera.[4]

In *United States v. Gardner*, 23 F.Supp.2d 1283, 1294 (N.D.Okla.1998), which is one of the few reported cases applying the Hyde Amendment, the court directed the Government to produce in camera:

1. All internal Internal Revenue Service documents or reports referring or pertaining to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax Service, or Gardner's Used Books & Comics.

2. All internal Department of Justice documents or reports referring or pertaining to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax

---

4. Although the Government made no attempt to present evidence ex parte or in camera, it did file its response to the Hollands' fee petition under seal. However, on July 8, 1998, it moved to unseal its response to the petition which included the post hoc affidavits and prohibited grand jury testimony. The Government was obviously more protective of the confidentiality of its contemporaneous notes than of the grand jury testimony and affidavits which repeated its charges against the Hollands and implied wrongdoing as to others as well. The Court later unsealed the Government's response but ordered that the post hoc affidavits and grand jury testimony remain under seal.

Service, or Gardner's Used Books & Comics.

3. All investigation and/or prosecution policies of the Internal Revenue Service and the Department of Justice that refer or pertain to the investigation and/or prosecution of Mr. Gardner, Gardner's Tax Service, or Gardner's Used Books & Comics.

The *Gardner* court concluded that, "In sum, the Court believes that the review of the above materials is necessary for the Court to discharge its obligation under the Hyde Amendment to determine whether the Government's actions were vexatious, frivolous, or in bad faith." *Id.* Likewise, in the instant case, this Court ruled that either party could supplement the record with evidence reflecting upon their respective pre-trial positions with regard to the prosecution of the Hollands.[5] Accordingly, the Court **DENIES** the Government's motion to reconsider the exclusion of the affidavits.

### C. *Credibility of the Grounds of Defense*

Thirdly, the Government moves the Court to reconsider its finding that the Prosecution's continuing reliance upon the discredited Grounds of Defense was evi-

dence of its vexatious misconduct. The Government erroneously characterizes this ruling as a finding upon all of the testimony of Sheeran and Dr. and Mrs. March. According to the Government, "this Court was not warranted in finding that the executive branch could not reasonably have believed that Sheeran would be credited by the jury." (Government's Motion at p. 20–21). The Government argues that Sheeran may have been an "impeachable" witness, but that it nevertheless could rely upon his testimony in deciding to prosecute the Hollands. The Government also challenges what it incorrectly characterizes as the Court's findings regarding the credibility of Dr. and Mrs. March.

The Government has raised this issue several times. The pertinent question is whether a reasonable prosecutor should use, as part of his or her basis for prosecution, Sheeran's irreconcilably conflicting testimony regarding the Grounds of Defense filed in behalf of Mrs. March and the bankruptcy filings in behalf of both Dr. and Mrs. March.[6] The Court did not instruct the jury to disregard all of Sheeran's testimony. However, the Court did instruct the jury to disregard Sheeran's testimony regarding the Grounds of Defense.[7] The Court found that a reasonable

---

**5.** Both parties were granted leave to supplement the record, and the Hollands requested leave to present the evidence which they would have presented had the acquittal not been granted. For reasons explained in its February 3, 1999 Order, this Court denied their request.

**6.** The government's motion suggests that the Court places a disproportionate degree of blame for this and other prosecutorial decisions upon the "line prosecutor." Such is not the case. The Court observed at the criminal trial that it did not understand how such a prosecution survived the multiple layers of review to which such indictments are subjected. Further, at the point in time when the Court found the prosecution to be vexatious, the Department of Justice was still an active participant in the prosecution.

**7.** The Court's stated to the jury in pertinent part:

Ladies and gentlemen, I'm going to have to ask you again to disregard evidence that you've heard, and I'm speaking of the answer. It's been called grounds of defense or answers filed by the attorney, Mr. Sheeran, for Mrs. March, and I think that I've got to explain to you why I say that. Mr. Sheeran testified, and of course, this was the subject of several of the questions you just heard. Mr. Sheeran testified that he believed in good faith that Dr. March entered into some agreement with the bank to place loans, which were actually his, in his wife's name in order to mislead the FDIC; and he said when he testified here today that he still believed in good faith that that was correct.

He also said that he filed bankruptcy petitions in behalf of Dr. March and Mrs. March. In those bankruptcy petitions he listed under Dr. March's name the loans that the bank has in the name of Dr. March. He listed in Mrs. March's bankruptcy petition—and these peti-

prosecutor should not have relied on Sheeran's conflicted testimony and representations with regard to the Grounds of Defense, since it directly contradicted other documents filed in behalf of the same clients by Sheeran in the bankruptcy division of this Court. In addition to this irreconcilable conflict, the prosecution had uncontroverted evidence that Sheeran represented Dr. March while filing the Grounds of Defense accusing Dr. March of fraud upon another client of his, Mrs. March. Sheeran also planned to continue his representation of the Marches while testifying at the criminal trial in direct conflict with them.

Further, the Court did not rule that the Marches were or were not credible as a matter of law. However, once the Grounds of Defense was removed from the case, the Marches' testimony was the only evidence of criminal intent remaining [8] and the FDIC had already branded Mrs. March a liar based on the same statements which she later gave at trial. The only evidence which supported the prosecution's theory of the case was the Grounds of Defense prepared by Sheeran.[9] The Prosecution knew that the Marches' testimony would assist the Hollands for the most part, and it attempted to turn them into Government witnesses with Sheeran's help. Thus, the Government's only three significant factual witnesses, Sheeran on the one side and the Marches on the other, contradicted each other. The Government accuses the Marches of "doing a 180." The Court found that the Government attempted to persuade them to "do a 180" but, although they were immunized by the Government, they refused to do so.

▮ Rule 60(b) does not authorize reconsideration of a legal issue based upon a request that the Court change its mind. The Government has not offered any new facts, evidence or significant argument. The Court made no ruling upon the credibility of the testimony of Sheeran beyond the Grounds of Defense,[10] and his credibility, apart from the Grounds of Defense, is not relevant to this petition. The Court has not ruled upon the credibility of Dr. or Mrs. March. The admissibility of the Grounds of Defense at the criminal trial is not an issue in this petition. In finding the Grounds of Defense an insufficient basis for prosecution, the Court relies on both the inconsistencies between it and the bankruptcy filings and Sheeran's other conflicts, all of which were known to the Prosecution no later than January 6, 1999. The Government offered no evidence, other than Sheeran's testimony, to support the Grounds of Defense. Accordingly, the Court **DENIES** the Government's motion

tions are exhibits in the case—all of the loans that were in her name.

If his answer had been correct, then he could not list the loans in Mrs. March's name as her loans because he had previously said they weren't hers. Further, if he believed that these loans were created by collusion between Dr. March and the Hollands, then they should have been listed in Dr. March's schedule of debt.

8. The following passage from the Government's motion bears repeating here: "a principal basis upon which the Court deemed the prosecution vexatious was its view that the government should have known that the witnesses it needed to establish the Hollands' criminal intent (principally Sheeran and, to a lesser extent, Dr. and Mrs. March) were 'incredible as a matter of law' " (Government's Motion at p. 19).

9. The Government recognizes that the only witnesses available to establish criminal intent were Sheeran and Dr. and Mrs. March, and the Government knew that the testimony of Sheeran and the Marches was in conflict. Again a quote from the Government's initial response bears repeating: "For example, in granting the defendant's motion for judgment of acquittal as to Count 23, a false statement to the FDIC, the Court, in its written opinion filed April 30, 1998 discusses extensively its reasons for rejecting Sheeran's testimony, and (as an inevitable corollary) accepting as consistent and credible the testimony of the Marches." (Government Response at p. 29)

10. The ruling upon his testimony regarding the Grounds of Defense largely eliminated his value to the prosecution.

to reconsider its ruling regarding the Grounds of Defense.

The Government continues to insist that it justifiably relied on Sheeran's testimony regarding the Grounds of Defense which he filed as supporting its prosecution of the Hollands. The FDIC originally raised the issue of Sheeran's conflicts of interest in its investigation of the Hollands several years earlier. Sheeran discontinued representing the Marches for the remainder of the FDIC investigation. Nevertheless, he reappeared as the Marches attorney during the grand jury investigation and the prosecution which followed. The Hollands moved to disqualify him as the Marches' attorney. The Prosecution then filed a lengthy brief opposing Sheeran's disqualification. The Court inquired of the Government as to why it opposed Sheeran's disqualification when it was a government agency which initially questioned his conflicts. The Government continues to leave this question unanswered. The Defendants admit that they sought Sheeran's disqualification not only because of the conflicts, but also because they believed that he had instructed the Marches not to discuss the case with the Hollands or their attorneys. Thus, the Hollands concede that they were motivated in part by their interest in interviewing the Marches. However, the Government refuses to concede that it opposed Sheeran's disqualification for the same reason that the Hollands sought his disqualification—because he allegedly shielded the Marches from pretrial interviews by the Hollands and their attorneys. The Court stated to the Government at the August hearing on the Hyde Amendment petition that it inferred that the Government ignored Sheeran's pleading and ethical conflicts in order to promote his influence over the Marches. The Government continues to deny that it was guided in any degree by this reason, but it has offered no reasonable alternative.

### D. *Assessment of Damages Against the FDIC*

█ In their original Hyde Amendment petition, the Hollands asked the Court to assess attorneys fees and litigation expenses against the FDIC and the FBI in addition to the Department of Justice and the United States Attorney's Office for the Eastern District of Virginia. In its February 3, 1999 Opinion and Order, the Court assessed a portion of the attorneys fees and expenses against the FDIC. However, the Hollands, in their amended Hyde Amendment petition, requested that the award be paid by the United States Department of Justice and/or the United States Attorney's Office for the Eastern District of Virginia. According to the Hollands, they filed their amended petition based upon the representation of an Assistant United States Attorney that the Department of Justice would pay the entire amount, if any, awarded under the Hyde Amendment. Although the Government only raises the issue that the FDIC was not before the Court in a footnote in its motion for reconsideration (at p. 23), the Court believes that due process concerns are implicated regarding the FDIC which are a proper subject for Rule 60(b) reconsideration. Arguably, the Hollands' amended petition could be interpreted broadly enough to include other agencies of the United States Government, since the United States is the named party as opposed to any of its agencies. However, when the amended petition is compared with the original petition it appears that the Hollands purposefully did not seek relief against the FDIC or FBI in their amended petition.[11] Further the Hollands concede as much in their response to the motion for reconsideration.

---

11. The Court did not find any evidence of vexatious conduct on the part of the FBI. Although the Court found the testimony of Agent Patterson relevant, his testimony was an assessment of the basis for the decision to prosecute. This Court did not interpret his statement as *mea culpa,* but as implicating the Prosecution. Insofar as his testimony implicates the Department of Justice and the United States Attorneys Office for the Eastern District of Virginia, the Court believes it is

While the Court adheres to its factual findings regarding the FDIC investigation and proceedings, it **RECONSIDERS** its finding of vexatious misconduct by the FDIC in Part III Section C (p. 28 and 29) and in Part IV Section A (p. 36 and 37) of its February 3, 1999 Opinion and Order and its assessment of damages against the FDIC in Part VI (p. 61 and 62), as it **FINDS** that the FDIC did not have sufficient notice that attorneys fees and litigation expenses might be assessed against it.

The evidence regarding the FDIC's conduct remains relevant since substantially all of the Prosecution's evidence was developed by the FDIC which re-referred the case for criminal investigation, and the Prosecution relied upon the FDIC evidence in the criminal proceedings. Accordingly, the Court **VACATES** that portion of Part III Section C, Part IV Section A and Part VI of its February 3, 1999 Opinion and Order with respect to the finding of vexatious misconduct on the part of the FDIC and the assessment of damages against it.

The Hollands argue that the Court should amend its Order to impose joint and several liability against the Department of Justice, the United States Attorney's Office and the FDIC based upon an Assistant United States Attorney's representation to them that the Department of Justice would pay whatever fees and expenses were awarded. However, the Court may not make a finding against the FDIC if that agency had insufficient notice. Further, the Court cannot make a finding based upon the allegations in the Hollands' response stating that the Assistant United States Attorney agreed that the Department of Justice would pay any sum awarded. This fact is not in evidence or admitted by the Government. Nevertheless, in light of Congress's intent to compensate criminal defendants when they have been subjected to vexatious prosecutorial misconduct, the Court does not believe that it would be appropriate to re-

entirely consistent with the weight of the oth-

duce the Hollands' recovery because the Court vacated its findings against the FDIC. This decision is dictated by the language of the Hyde Amendment which provides that "Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation."

The result would be the same if the Court applied Federal or State common law tort principles. The cause of action most akin to that created by the Hyde Amendment is an action for malicious prosecution, which, like this action, is a tort claim for money damages. Under familiar principles a party occupying the position of the Department of Justice and the United States Attorney's Office, whether acting as a tortfeasor singly or jointly, is liable for the whole of the damages recoverable by the injured party.

Since the Court has vacated its findings against the FDIC, the Department of Justice and the United States Attorney's Office for the Eastern District of Virginia remain as the agencies over which the Hollands prevailed, and the Court **DE-CLINES** to reconsider its award of attorneys fees and legal expenses against the Department of Justice and its subsidiary, the United States Attorney's Office for the Eastern District of Virginia in the stipulated amounts of attorneys fees of $297,-473.65 to Holland, Sr. and $216,844.35 as to Holland, Jr., and litigation expenses of $40,828.00 as to Holland, Sr. and $15,-512.00 as to Holland, Jr. Unlike the comparison of the FDIC's conduct with that of the Prosecution in Part VI of its February 3, 1999 Opinion and Order, there is insufficient intra-department evidence to consider an apportionment between the Department of Justice and the United States Attorney's Office for the Eastern District of Virginia.

## IV. *Conclusion*

For the foregoing reasons, the Court **DENIES** the Government's motion that

er evidence.

the Court reconsider its application of the EAJA to the Hollands' Hyde Amendment petition. Further, the Court **DENIES** the Government's motion to reconsider the exclusion of the post hoc affidavits. The Court also **DENIES** the Government's motion to reconsider its ruling regarding the Grounds of Defense. Finally, the Court **RECONSIDERS** its finding of vexatious misconduct by the FDIC and its assessment of damages against it and **VACATES** that portion Part III Section C, Part IV Section A and Part VI of its February 3, 1999 Opinion and Order reciting such findings and assessments. The Court **DECLINES** to reconsider its finding of vexatious misconduct by the Prosecution, and accordingly assesses damages against the Department of Justice and the United States Attorney's Office for the Eastern District of Virginia, jointly and severally in the amounts awarded in Part V, pages 60 and 61 of its Opinion and Order of February 3, 1999.

The Clerk is **REQUESTED** to send copies of this Order to all counsel of record.

It is so **ORDERED.**